DECISION
{¶ 1} Relator, William J. Gill, Jr., has filed this original action requesting that this court issue a writ of mandamus ordering respondents, School Employees Retirement *Page 2 
System ("SERS") and Ohio Public Employees Retirement System ("OPERS") to grant him combined disability retirement benefits.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court grant relator's request for a writ of mandamus. (Attached as Appendix A.) SERS has filed objections to the magistrate's decision.
 {¶ 3} SERS presents three objections. In its first objection, SERS argues that the magistrate wrongfully concluded that a member of a retirement system may apply for and receive a combined disability benefit even after that member is receiving disability benefits independently from another system. In its second objection, SERS argues that the magistrate erred when he concluded that relator is entitled to combined disability if SERS grants relator's appeal and issues a final determination finding him disabled from his SERS-covered position. In its third objection, SERS argues the magistrate erred when he failed to address whether SERS properly determined relator's "last day of service" was with an SERS-covered employer. We will address all three objections together, as they are related.
 {¶ 4} Underlying SERS's objections is the assertion that the magistrate erred when it found relator's last day of service was irrelevant for purposes of determining relator's writ of mandamus. In denying relator's application for combined benefits, SERS determined the last day of service was with the SERS employer. SERS contends the last day of service is a predicate issue to the determination of whether relator is disabled because both retirement systems must evaluate the member for disability based on the *Page 3 
job the member was performing on the last date of service, regardless of whether that last day of service was with an SERS or OPERS employer. Thus, SERS posits, in a combined benefits situation, both systems consider the same job when determining disability. Accordingly, SERS claims that, if relator's last day of service was with the SERS employer, then both SERS and OPERS are required to evaluate relator's combined disability claim by considering the job requirements for the SERS-covered position.
 {¶ 5} We find no authority to support SERS's contention that, when making a combined benefits determination, both systems are required to determine disability based upon the job with the last day of service, regardless of which system that employment was under. Initially, we note that SERS did not assert this interpretation in its original briefing before the magistrate. Notwithstanding, we find no requirement for such in any statute or the Ohio Administrative Code section. The only authority cited by SERS to support its interpretation is R.C. 3309.39(C) and Ohio Adm. Code 145-2-25(B)(1) and (2), which both apply only to OPERS. However, none of these provisions state what SERS claims they state. R.C. 3309.39(C) provides only that the physician must determine whether the member is mentally or physically incapacitated by a disabling condition "for the performance of the member's last assigned primary duty as an employee." This section makes no mention that OPERS should consider the member's last assigned primary duty as an employee of any retirement system. Rather, implicit in this section is that the "last assigned primary duty" refers to the last assigned duty with OPERS. Ohio Adm. Code 145-2-25(B)(1) and (2) provide only that, in the context of an application for a combined disability benefit with SERS, if OPERS is paying for the examining physician *Page 4 
report, disability for performance of duty must be determined on the basis of the duties for the most recent service covered by OPERS. This section does not indicate that, if another system is paying for the examining physician report, as in this case, disability for performance of duty must be determined on the basis of the duties for the most recent service covered by that other system. Thus, we find SERS's contention, in this respect, without merit.
 {¶ 6} Based upon the same premise argued above, SERS also claims that, even if SERS were to now grant relator's combined benefits on appeal, OPERS's subsequent recalculation of combined benefits would be impermissible without OPERS's first making a determination of disability based upon relator's last SERS employment. SERS asserts that, although OPERS has already found relator disabled based upon his last OPERS employment for purposes of his independent OPERS disability benefit, OPERS has never determined that relator is disabled based upon his SERS employment. Thus, SERS contends the effect of the magistrate's decision would be the granting of combined benefits based upon disability determinations for two different jobs. However, because we have already determined above that there is no authority to support SERS's contention that both systems must find a member disabled based upon the same job (that being the job with the last day of service regardless of which system the employment was under), SERS's argument, in this respect, must also be rejected.
 {¶ 7} SERS also argues that it properly voided the combined disability benefit application pending before it because relator's independent disability benefit had already been approved by OPERS. More simply, SERS asserts that, once a member receives an independent disability benefit from one system, the member is no longer entitled to a *Page 5 
decision on a pending combined benefits application. However, despite SERS's pleas to the contrary, we find no statutory authority to support its contention that relator's application for combined disability benefits with SERS was automatically voided after OPERS approved his independent disability benefit. Although throughout its brief SERS relies on the maxim that SERS and OPERS are creatures of statute that possess only that authority expressly granted to them, SERS fails to cite any statutory authority authorizing it to void a pending appeal based upon the acceptance of independent benefits from another system.
 {¶ 8} SERS further asserts that, even if it were to find relator was entitled to combined disability benefits, pursuant to the magistrate's order, OPERS would be without authority to rescind the independent disability benefit, as there is no statutory basis to allow OPERS to convert its independent disability benefit to a combined benefit or rescind its independent disability benefit to grant combined benefits. However, OPERS has not filed any objections to the magistrate's decision. In fact, OPERS indicated in a December 9, 2005 letter, that it is willing to administer relator's combined benefits should SERS find relator disabled. Thus, we find SERS lacks standing in this proceeding to question OPERS's actions and OPERS's interpretation of its own authority. We also note that we do not read the sentence "[t]he action of the board shall be final" in R.C. 145.35(E) as prohibiting OPERS from taking further action as may be called for under the circumstances of this case; rather, this sentence refers to the fact that there exists no further right to appeal the board's action. For these reasons, we find SERS's objections are without merit. *Page 6 
 {¶ 9} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ. R. 53, and due consideration of SERS's objections, we overrule the objections. Accordingly, although we adopt the magistrate's decision as our own with regard to the findings of fact and conclusions of law, we modify the final order as it relates to OPERS. Insofar as the magistrate ordered OPERS to recalculate relator's combined disability benefit if SERS determines that relator is entitled to combined benefits, we remove that directive as an order of the court; however, OPERS has represented that it will recalculate relator's combined disability benefit under such circumstances. Therefore, we grant relator's request for a writ of mandamus.
Objections overruled; writ of mandamus granted.
PETREE, J., concurs.
 BRYANT, J., dissents. *Page 9 
 APPENDIX A MAGISTRATE'S DECISION Rendered on November 28, 2007 IN MANDAMUS {¶ 10} In this original action, relator, William J. Gill, Jr., requests a writ of mandamus ordering respondents School Employees Retirement System ("SERS") and *Page 10 
Ohio Public Employees Retirement System ("OPERS") to grant him a combined disability retirement.
Findings of Fact: {¶ 11} 1. Relator's membership in OPERS began in May 1988 when he returned to employment with the city of Cleveland. His OPERS membership continued when, in March 1989, he became employed with Cuyahoga County and thereafter, in 1991, when he obtained the position of "Stationery Engineer 1" with the "Central Services" department of Cuyahoga County.
 {¶ 12} 2. Relator's SERS membership began in 1999 when he began employment as a high school "Weight Room Supervisor/Strength Coach" with the Fairview Park City School District ("Fairview Park").
 {¶ 13} 3. On March 20, 2003, relator sustained an industrial injury in the course of his employment with Cuyahoga County.
 {¶ 14} 4. In July 2004, relator filed with OPERS an application for a disability benefit on a form provided by OPERS. The form asks whether the applicant wants to "combine your account with PERS if you are a member of STRS or SERS?" Indicating SERS membership, relator responded with a "Yes" to the query.
 {¶ 15} 5. In support of his OPERS application for a combined disability benefit, relator submitted an attending physician's report completed by Louis Keppler, M.D.
 {¶ 16} 6. When an application for a disability benefit is filed, OPERS requires a certification from the employer's fiscal officer. On a form provided by OPERS, a fiscal officer of Cuyahoga County certified that April 4, 2003 was the "final day for which this employee was * * * compensated." *Page 11 
 {¶ 17} 7. By letter dated July 20, 2004, OPERS informed relator:
 We have received your application for a disability retirement on a combined basis with the School Employees Retirement System. Since your more recent service is with an employer covered under the School Employees Retirement System, you must apply with that system first. They will be responsible for your medical examination. The School Employees Retirement System has been notified, and will be sending you an application packet.
 If the School Employees Retirement System approves your application, your case will be presented to our Retirement Board for review. If our Retirement Board approves your application, the accounts in both systems will be combined and the Public Employees Retirement System will be responsible for payment of your monthly benefit and for providing your health care coverage.
 {¶ 18} 8. On September 7, 2004, relator filed with SERS a disability retirement application on a form provided by SERS. The application form asks the applicant to state the "[l]ast date of paid service including sick leave and vacation." Relator listed "5-31-2003" as his response.
 {¶ 19} 9. Under cover of letter dated September 13, 2004, SERS asked the Fairview Park Treasurer to complete an SERS form captioned "Treasurer's Certification of Final Deposits."
 {¶ 20} 10. On September 24, 2004, Fairview Park Treasurer Mike Barnhart completed and signed the SERS form. The treasurer's certification form asks the treasurer to list "[t]he member's last date of service, including days worked and used paid leave." In response, Treasurer Barnhart wrote "May, 2003." *Page 12 
 {¶ 21} 11. On November 8, 2004, at SERS's request, relator was examined by Jeffrey R. Blood, M.D., who wrote: "I feel he should be able to resume his former job in three months and I do not feel that he needs to be retired. The three months would allow him to complete the therapy program and get placed on a home exercise program."
 {¶ 22} 12. By letter dated January 25, 2005, SERS informed relator that the retirement board had agreed with the recommendations of the medical advisory committee to disapprove his application. The letter informed relator that he could appeal the decision of the retirement board.
 {¶ 23} 13. Relator timely filed an appeal of the decision of the SERS retirement board and he requested a personal appearance.
 {¶ 24} 14. On April 11, 2005, while his appeal was pending with SERS, relator filed a second disability benefit application with OPERS. However, in response to a query on the OPERS application form, relator elected not to seek a combined disability benefit.
 {¶ 25} 15. On May 31, 2005, relator was examined, at the request of OPERS, by Michael A. Harris, M.D., who reported:
 IMPRESSION: A 54-year-old gentleman with a longstanding history of spondylogenic low back pain status post L4-L5 laminotomy in 1995 with recent work injury on March 20, 2003, resulting in aggravation of preexisting degenerative disease. He also suffered a fall and a Grade IV disruption of the AC joint in 4/04 S/P repair [in] 8/04 [w]ith good results. He has ongoing low back and right radicular symptoms as well as ongoing pain in the right shoulder especially with overhead motion.
Based on the history and physical, I hereby certify that because of the above described condition, Mr. Gill is presumed to be physically incapacitated permanently for the performance of duty as a building engineer and is entitled to a disability benefit. *Page 13 
 {¶ 26} 16. On June 15, 2005, OPERS notified relator that his disability application had been approved by the OPERS retirement board to be effective May 1, 2003.
 {¶ 27} 17. On June 23, 2005, relator, along with counsel, personally appeared before the SERS retirement board. The proceedings on June 23, 2005, were recorded and transcribed for the record. During the hearing, relator informed the retirement board that he had recently been notified by OPERS that his disability application had been approved. During the hearing, relator's counsel also disputed that relator's last day of compensation with Fairview Park fell after relator's last date of compensation with Cuyahoga County.
 {¶ 28} 18. In a letter dated September 2, 2005, relator's counsel informed SERS:
 The evidence enclosed clearly shows Mr. Gill's last date of employment with Cuyahoga County of April 5, 2003 and his last date of employment with Fairview Park Schools was March 31, 2003.
 Further, any and all payments from Fairview Park Schools to Mr. Gill from March 8, 2003 were not cashed due to the fact that he was on temporary total disability from April 7, 2003 through to the present date. The Ohio Bureau of Workers' Compensation bars an injured worker from receiving any funds whatsoever while on temporary total disability. Mr. Gill in an abundance of caution did not cash any of the subsequent checks he received from SERS after applying for temporary total under workers' compensation in spite of the fact that those checks were for work performed nearly two months earlier. I believe the letter from David Chambers, Treasurer of the Fairview Park Schools and the e-mail from Mr. Edward Eiskamp articulate our position.
 With this documentation enclosed, we ask that Mr. Gill's original application filed July 15, 2004 be sent back and reviewed as SERS [sic] has statutory jurisdiction in this matter. *Page 14 
Attached to the September 2, 2005 letter was a letter dated August 26, 2005 from David M. Chambers, the Fairview Park Treasurer:
 * * * William Gill * * * is a former employee of the district performing the duties of Weightlifting Coach. This was a supplemental position in the district and he was given supplemental payment for these duties.
 According to our former Athletic Director, Edward Eiskamp, Mr. Gill's last day of work was March 31, 2003. He continued to be paid beyond this date because the position was paid over a twelve month period.
 Attached is a copy of Mr. Eiskamp's statement. * * *
Also attached to the September 2, 2005 letter is an e-mail from "Ed Eiskamp, Retired AD[,] Fairview High School" dated August 26, 2005. The e-mail states:
 As the former Athletic Director of Fairview High School and the last supervisor of Bill Gill as Weightroom Coach please be advised that his last day of work, in said position, was March 31, 2003. He continued to be paid because positions of this type are paid over 12 months even though his work had ended (receiving money for work already completed).
 I hope this clears up any misunderstanding of his employment with the Fairview Park City School District.
 {¶ 29} 19. By letter dated September 2, 2005, relator's counsel advised OPERS:
 Please be advised that this office represents Mr. William Gill in regards to his Joint Application for Ohio Public Employees Retirement System Disability and SERS.
 We filed our application [o]n July 15, 2004. At that time OPERS made a determination that his last employment was with the Fairview Park Schools after his termination of employment with Cuyahoga County, Ohio and as such SERS had jurisdiction over the application. We were in complete disagreement with that finding and have voiced our disagreement previously to no avail.
 Enclosed please find documentation from Fairview Park Schools which clearly shows that Mr. Gill's last date of employment and service with them was prior to his *Page 15 
termination of service with Cuyahoga County, Ohio. As such, the initial determination by OPERS to have his application heard by SERS was in clear error. Mr. Gill had not worked at SERS since March 31, 2003, his last date of employment of Cuyahoga County was April 5, 2003. As such, OPERS had statutory jurisdiction to hear this application. A mix-up at Fairview Park Schools and improper documentation provided to OPERS lead to this erroneous determination. With the documentation enclosed, I ask that it be reviewed and that Mr. Gill's original application be for a joint OPERS, SERS disability be determined and/or set for a formal hearing.
 Further, any and all payments from Fairview Park Schools to Mr. Gill from March 8, 2003 were not cashed due to the fact that he was on temporary total disability from April 7, 2003 through to the present date. The Ohio Bureau of Workers' Compensation bars an injured worker from receiving any funds whatsoever while on temporary total disability. Mr. Gill in an abundance of caution did not cash any of the subsequent checks he received from SERS after applying for temporary total under workers' compensation in spite of the fact that those checks were for work performed nearly two months earlier. I believe the letter from David Chambers, Treasurer of the Fairview Park Schools and the e-mail from Mr. Edward Eiskamp articulate our position.
 {¶ 30} 20. By letter dated December 9, 2005, OPERS informed relator:
 On December 1, 2005, we were contacted by your representative, Albert Sammon, via telephone in regard to the request for a recalculation of your disability benefit. The telephone conversation with Mr. Sammon took place per your completed Authorization for the Release of Information form received by us on November 21, 2005. During our discussion with Mr. Sammon, he stated you believe your final date rendered with an employer covered by the School Employees Retirement System (SERS) was prior to the final date rendered under your Ohio PERS employer.
 This information has been taken into consideration and we have determined that if revised information is received from SERS, we would recalculate your benefit on a joint basis under Ohio PERS. Specifically, we would require SERS to re-certify your final date of compensation under Fairview *Page 16 
Park Schools, this date would have to have been prior to April 4, 2003 which was your final date with Cuyahoga County. In addition, we would also require SERS to transfer your funds on deposit with them to include your service credit and salary information rendered under that system.
(Emphasis sic.)
 {¶ 31} 21. By letter dated January 13, 2006, relator's counsel requested of SERS as follows:
 * * * OPERS has suggested that Mr. Gill request SERS to recertify his final date of compensation under Fairview Park Schools. In the event that SERS re-certifies Mr. Gill's final date of compensation and agrees with OPERS, then OPERS will assume control over his entire disability application * * * except for the determination by SERS of Mr. Gill's eligibility which issue is currently on appeal and awaiting decision.
 Since there has been no formal decision of the SERS Board on Mr. Gill's appeal on the issue of eligibility, it is requested that you or SERS review the enclosed information from Mr. Chambers. Note that the original and only affidavit [sic] of Mr. Chambers sits in the files of OPERS. Further, it is requested that based on this information, SERS re-certify Mr. Gill's final date of compensation to be consistent with the information provided by Mr. Chambers and determine Mr. Gill's eligibility pursuant to his appeal.
 {¶ 32} 22. By letter dated February 21, 2006, SERS staff counsel informed relator's counsel as follows:
 Katherine Larabee, Senior Manger of Disabilities, has forwarded your letter of January 13, 2006 to me for a response.
 You correctly note that SERS did not provide Mr. Gill with a written determination of his appeal. At Mr. Gill's June 23rd hearing on appeal, SERS learned that Mr. Gill had applied for independent disability from PERS, and that PERS had granted his application. When Mr. Gill went on independent disability from PERS he was no longer eligible to seek joint disability, and his application for joint disability with SERS *Page 17 
was accordingly voided; Mr. Gill's counsel, Mr. Sammon, was advised of this by telephone.
 Regarding the issue of Mr. Gill's last date of service, SERS determines this date from the Treasurer's Certification of Final Deposits. SERS received a signed Treasurer's Certification of Final Deposits, copy enclosed, certifying that Mr. Gill's last date of service was in May, 2003. Additionally, in his signed application for disability, Mr. Gill indicated that his last date of paid service was May 31, 2003. Accordingly, SERS has no basis to recertify Mr. Gill's last date of service to PERS.
 {¶ 33} 23. On April 9, 2007, relator, William J. Gill, Jr., filed this mandamus action. Conclusions of Law:
 {¶ 34} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 35} R.C. 145.37, a statute relating to OPERS, is captioned "Coordinating membership in state retirement systems; combining contributions and service credits." R.C. 145.37 provides:
 (A) As used in this section:
 (1) "State retirement system" means the public employees retirement system, school employees retirement system, or state teachers retirement system.
 (2) "Total service credit" means all service credit earned in the state retirement systems, except credit for service subject to section 145.38 of the Revised Code. Total service credit shall not exceed one year of credit for any twelvemonth period.
 (3) In addition to the meaning given in division (N) of section 145.01 of the Revised Code, "disability benefit" means "disability benefit" as defined in sections 3307.01 and 3309.01 of the Revised Code.
 (B) To coordinate and integrate membership in the state retirement systems, the following provisions apply: *Page 18 
 (1) At the option of a member, total contributions and service credit in all state retirement systems, including amounts paid to restore service credit under sections 145.311, 3307.711, and 3309.261 of the Revised Code, shall be used in determining the eligibility and total retirement or disability benefit payable. When total contributions and service credit are so combined, the following provisions apply:
 * * * *
 (b) In determining eligibility for a disability benefit, the medical examiner's report to the retirement board of any state retirement system, showing that the member's disability incapacitates the member for the performance of duty, may be accepted by the state retirement boards as sufficient for granting a disability benefit.
 (c) The state retirement system in which the member had the greatest service credit, without adjustment, shall determine and pay the total retirement or disability benefit. Where the member's credit is equal in two or more state retirement systems, the system having the largest total contributions of the member shall determine and pay the total benefit.
 (d) In determining the total credit to be used in calculating a retirement or disability benefit, credit shall not be reduced below that certified by the system or systems transferring credit, except that such total combined service credit shall not exceed one year of credit for any one "year" as defined in the law of the system making the calculation.
 (e) The state retirement system determining and paying a retirement or disability benefit shall receive from the other system or systems the member's refundable account at retirement or the effective date of a disability benefit plus an amount from the employers' accumulation fund equal to the member's refundable account less interest credited under section 145.471, 145.472, or 3307.563 of the Revised Code.
 * * *
 {¶ 36} Supplementing the statute, Ohio Adm. Code 145-2-25 is captioned "Combined disability benefits." The rule provides: *Page 18 
 (A) This rule amplifies section 145.37 of the Revised Code.
 (B) If a member of the public employees retirement system files an application for a disability benefit pursuant to section 145.35 of the Revised Code, and also chooses to apply for a combined disability benefit with the state teachers retirement system and/or school employees retirement system, the following shall apply.
 (1) This system shall request and pay for the examining physician(s) report(s) if:
 (a) The member's last public service was covered by this system, and he was not contributing concurrently to such other retirement system(s) as of the last covered date of public service, or;
 (b) The member's contributions to this system for Ohio service credit during the twelve months preceding an application are greater than such contributions to such other retirement system(s) during the same period and he was contributing concurrently to such other system(s) as of his last covered date of public service.
 {¶ 37} R.C. 3309.35, a statute relating to SERS, is captioned "Coordinating membership in the state retirement systems; combining contributions and service credits." R.C. 3309.35 provides:
 (A) As used in this section:
 (1) "State retirement system" means the public employees retirement system, state teachers retirement system, or school employees retirement system.
 (2) "Total service credit" means all service credit earned in all state retirement systems, except credit for service subject to section 3309.341 of the Revised Code. Total service credit shall not exceed one year of credit for any twelvemonth period.
 (3) In addition to the meaning given in division (O) of section 3309.01 of the Revised Code, "disability benefit" means "disability benefit" as defined in sections 145.01 and 3307.01 of the Revised Code. *Page 20 
 (B) To coordinate and integrate membership in the state retirement systems, at the option of a member, total contributions and service credit in all state retirement systems, including amounts paid to restore service credit under sections 145.311, 3307.711, and 3309.261 of the Revised Code, shall be used in determining the eligibility and total retirement or disability benefit payable. When total contributions and service credit are so combined, the following provisions apply:
 * * *
 (2) In determining eligibility for a disability benefit, the medical examiner's report to the retirement board of any state retirement system, showing that the member's disability incapacitates the member for the performance of duty, may be accepted by the state retirement boards as sufficient for granting a disability benefit.
 (3) The state retirement system in which the member had the greatest service credit, without adjustment, shall determine and pay the total retirement or disability benefit. Where the member's credit is equal in two or more state retirement systems, the system having the largest total contributions of the member shall determine and pay the total benefit.
 (4) In determining the total credit to be used in calculating a retirement allowance or disability benefit, credit shall not be reduced below that certified by the system or systems transferring credit, except that such total combined service credit shall not exceed one year of credit for any one "year" as defined in the law of the system making the calculation.
 (5) The state retirement system determining and paying a retirement or disability benefit shall receive from the other system or systems the member's refundable account at retirement or the effective date of a disability benefit plus an amount from the employer's trust fund equal to the member's refundable account less the interest credited under section 145.471, 145.472, or 3307.563 of the Revised Code. * * *
 {¶ 38} R.C. 145.35, a statute relating to OPERS, is captioned "Application and medical examination for disability retirement." R.C. 145.35 states: *Page 21 
 (B) The public employees retirement system shall provide disability coverage to each member who has at least five years of total service credit * * *.
 (C) Application for a disability benefit may be made by a member, by a person acting in the member's behalf, or by the member's employer, provided the member has disability coverage under section 145.36 or 145.361 of the Revised Code and is not receiving a disability benefit under any other Ohio state or municipal retirement program. Application must be made within two years from the date the member's contributing service terminated or the date the member ceased to make contributions to the PERS defined benefit plan under section 145.814 of the Revised Code, unless the retirement board determines that the member's medical records demonstrate conclusively that at the time the two-year period expired, the member was physically or mentally incapacitated for duty and unable to make an application. * * * The application shall be made on a form provided by the retirement board.
 {¶ 39} R.C. 3309.39, a statute relating to SERS, is captioned "Disability coverage." R.C. 3309.39 states:
 (A) The school employees retirement system shall provide disability coverage to each member who has at least five years of total service credit.
 * * *
 (B) Application for a disability benefit may be made by a member, by a person acting in the member's behalf, or by the member's employer, provided the member has at least five years of total service credit and has disability coverage under section 3309.40 or 3309.401 of the Revised Code. The application for a disability benefit shall be made on a form provided by the retirement board.
 * * *
 (D) Application for a disability benefit must be made within two years from the date the member's contributing service terminated, unless the retirement board determines that the *Page 22 
member's medical records demonstrate conclusively that at the time the two-year period expired, the member was physically or mentally incapacitated for duty as an employee and unable to make application. * * *
 {¶ 40} In July 2004, OPERS had a certification from Cuyahoga County's fiscal officer that April 4, 2003 was the last date of service with relator's OPERS contributing employer. There is no dispute here that April 4, 2003 is the last date of service with Cuyahoga County.
 {¶ 41} As previously noted, the record contains a September 24, 2004 certification from Fairview Park Treasurer Barnhart on a SERS form captioned "Treasurer's Certification of Final Deposits." On this form, Treasurer Barnhart certifies that "May, 2003" is relator's last date of service.
 {¶ 42} There is no dispute here that, if Treasurer Barnhart's certification is left to stand, then OPERS and SERS correctly applied Ohio Adm. Code 145-2-25 in determining that SERS is the retirement system that must initially provide for the examination.
 {¶ 43} As previously noted, by letter dated September 2, 2005, relator submitted to OPERS and SERS the August 26, 2005 letter from Fairview Park Treasurer Chambers indicating that relator last worked at Fairview Park on March 31, 2003.
 {¶ 44} As previously noted, on December 9, 2005, OPERS informed relator that it would require relator to obtain a recertification from SERS in order for OPERS to recaculate the disability benefit on a combined basis. Relator does not claim here that OPERS abused its discretion in requiring relator to obtain a recertification from SERS in order to recalculate the disability benefit on a combined basis. *Page 23 
 {¶ 45} In her letter of February 21, 2006, SERS's staff counsel explains why SERS refuses to rule on relator's appeal and why it refuses to recertify relator's last date of service:
 You correctly note that SERS did not provide Mr. Gill with a written determination of his appeal. At Mr. Gill's June 23rd hearing on appeal, SERS learned that Mr. Gill had applied for independent disability from PERS, and that PERS had granted his application. When Mr. Gill went on independent disability from PERS he was no longer eligible to seek joint disability, and his application for joint disability with SERS was accordingly voided; Mr. Gill's counsel, Mr. Sammon, was advised of this by telephone.
 Regarding the issue of Mr. Gill's last date of service, SERS determines this date from the Treasurer's Certification of Final Deposits. SERS received a signed Treasurer's Certification of Final Deposits, copy enclosed, certifying that Mr. Gill's last date of service was in May, 2003. Additionally, in his signed application for disability, Mr. Gill indicated that his last date of paid service was May 31, 2003. Accordingly, SERS has no basis to recertify Mr. Gill's last date of service to PERS.
 {¶ 46} The statutes do not support SERS's contention that relator's application for a combined disability benefit was automatically voided when he filed a second application for a disability benefit with OPERS. In fact, the December 9, 2005 OPERS letter informed relator that OPERS stands ready to recalculate his disability benefit on a combined basis if SERS recertifies the last date of service with Fairview Park and transfers the funds on deposit with SERS to OPERS. Apparently, based upon the December 9, 2005 letter, OPERS would have no problem doing a recalculation of the benefit and administering the combined disability payments as long as SERS agrees to the combined benefit. In the brief of OPERS filed in this court, OPERS states: "OPERS has never disputed that, had Relator's joint disability application been approved, OPERS would have been the *Page 24 
retirement system responsible for accepting his SERS contributions and service credit for the calculation of the disability benefit and for payment of the monthly disability benefit to relator." (OPERS's brief at 11.)
 {¶ 47} Clearly, this case is no longer about which retirement system will initiate and pay for the examination. SERS has already had relator examined by Dr. Blood and has entered a decision to deny the disability application. However, that SERS decision has been appealed by relator and SERS has not rendered a final decision on relator's administrative appeal. Also, OPERS had relator examined by Dr. Harris and on the basis of his report, awarded relator a disability benefit.
 {¶ 48} This magistrate agrees with respondents that OPERS cannot recalculate relator's disability benefit on a combined basis without SERS's final determination that relator is disabled under the SERS system. However, SERS has never made a final determination required by law.
 {¶ 49} With respect to staff counsel's letter of February 21, 2006, SERS is incorrect in holding that relator's combined disability application was automatically voided when relator filed a noncombined disability application with OPERS. The statutes do not support SERS's position on this. Also, whether or not it is an abuse of discretion for SERS to refuse to certify relator's last date of service is largely irrelevant to this case under the circumstances. What SERS cannot do at this point in these protracted administrative proceedings is to deprive relator of a final decision on his application for a combined disability benefit. Should SERS see fit to reverse itself on its initial determination to deny the application, OPERS apparently remains willing to recalculate the disability benefit on a combined basis. *Page 25 
 {¶ 50} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent SERS to render a final decision on relator's appeal and in a manner consistent with this magistrate's decision. Furthermore, the writ shall order respondent OPERS to recalculate relator's disability benefit on a combined basis in the event that SERS enters a final determination that relator is disabled under SERS.